STEAGALL, Justice.
This is an appeal by Ruby Hart and L.H. Hart, Sr. (“proponents”), from a judgment based on a jury verdict in favor of Grady Jackson, et al. (“contestants”), regarding the last will and testament of Minnie H. Tillman. We affirm.
Minnie H. Tillman executed a will on March 7, 1977. On May 28, 1983, Mrs. Tillman died.
On July 5, 1983, the proponents filed a petition to admit the will to probate. On July 27, 1983, before the will was admitted to probate, the contestants filed a contest of the will, removed the contest to the circuit court, and made a demand for trial by jury.
The case proceeded to trial in the circuit court in May 1985 upon two legal theories: undue influence and lack of testamentary capacity. The proponents moved for a directed verdict at the close of the contestants’ case and at the close of all the evidence. The trial court granted the proponents’ motion as to the issue of undue influence at the close of all evidence. Thus, the case proceeded to the jury solely on the issue of lack of testamentary capacity. The jury returned a verdict in favor of the contestants, finding that the will was not the valid last will and testament of Mrs. Tillman due to a lack of testamentary capacity.
The proponents present several issues on appeal, which this Court will address in order.
The first issue to be addressed is: Was the proponents’ motion for directed verdict specific enough as to the alleged lack of testamentary capacity to allow this Court to review that issue on appeal? We hold that it was not.
Rule 50, A.R.Civ.P., governs motions for directed verdict and for judgment notwithstanding the verdict. While this Court has held that the Alabama Rules of Civil Procedure should be liberally interpreted, we hold in this case that the proponents failed to preserve for our review the question of whether there was any evidence of lack of testamentary capacity.
The following is the proponents’ motion for directed verdict pursuant to Rule 50, A.R.Civ.P., at the close of contestants’ case:

“MOTION FOR DIRECTED VERDICT AFTER THE CONTESTANTS HAVE RESTED THEIR CASE

“Plaintiffs move the Court to direct a verdict, pursuant to Rule 50 of the Alabama Rules of Civil Procedure, in favor of the Plaintiffs in this case on the following grounds, to-wit:
“1. The Defendants have not made a prima facie case and the Plaintiffs are entitled to a directed verdict.
“2. There is not a scintilla of evidence of undue influence exercised by Ruby H. Hart on the testatrix, Minnie H. Tillman.” (Emphasis added.)
The will was contested upon two distinct legal theories, undue influence and lack of testamentary capacity. This Court can plainly see that the motion for directed verdict addresses the issue of undue influ *204 ence, but fails to see even the slightest suggestion that the motion also related to the issue of lack of testamentary capacity. A motion for directed verdict must have a certain degree of specificity in order for this Court to review it. This Court, after a close review of the record, fails to find the specificity required by Rule 50, A.R.Civ.P., and we have nothing to review.
The proponents clearly made a motion for directed verdict on the issue of undue influence, but did not also direct that motion toward the issue of lack of testamentary capacity.
We quote the following colloquy between the court and counsel at the close of all the evidence:
“THE COURT: Motion for directed verdict at the close of all the evidence.
“(ARGUMENTS PRESENTED IN BEHALF OF AND IN OPPOSITION TO SAID MOTION)
“THE COURT:
“I have spent a good bit of time the last two or three days in the evening after everybody left reading the case law on undue influence. In my reading of the cases, I have found — I am of the opinion that the Court requires all three elements of undue influence to be established by the evidence before this court can submit it to the jury. I am of the opinion there is no evidence before the jury on the issue of undue activity in making of or the execution of this will. It is therefore the order and judgment of this court [that] a directed verdict will be granted in behalf of the proponents on the issue of undue influence.
“MR. UTSEY:
“Your Honor, we would duly except to the ruling of the court.
“THE COURT:
“Do you want to make any argument on the issue of unsound mind, do you concede that is an issue?
“MR. HARLON TURNER:
“That is an issue, your Honor.
"THE COURT:
“This case is going to the jury on the issue of whether or not she [had] the testamentary capacity to make a will.”
In Treadwell Ford, Inc. v. Campbell, 485 So.2d 312, 315 (Ala.1986), a motor vehicle negligence case, the defendant argued that his motion for directed verdict should have been granted on the issue of the Alabama Extended Manufacturer’s Liability Doctrine. This Court stated:
“If a complaint has more than one count and the defendant believes that the evidence is not sufficient to support one or more of those counts, he must challenge this by motion for directed verdict, specifying the count which is not supported by evidence and detailing with specificity the grounds upon which the particular count is not supported by the evidence.” (Emphasis added.)
This Court finds that not only did the proponents fail to preserve the issue of lack of testamentary capacity as required by Rule 50, A.R.Civ.P., but counsel also acknowledged that this ground of contest was a triable issue.
The second issue presented to this Court for review is: Was the verdict of the jury rendered in the absence of indispensable parties? We hold that it was not.
The proponents of the will of Mrs. Tillman were Ruby H. Hart and L.H. Hart, Sr. The probate court named the following persons as contestants to the will: Grady Jackson, Milton Jackson, Gerald Jackson, and James Jackson. While these were the only parties to the contest, a notice to Mrs. Tillman’s next of kin had been advertised in the Choctaw Advocate for three consecutive weeks after the proponents had offered the will for probate.
The petition for probate listed 23 persons as next of kin. The proponents assert that, since not all the next of kin were made parties to the contest, the verdict was rendered in the absence of indispensable parties. We disagree.
It is important to note that as of the time the will was contested, it had not been admitted to probate. Code of Alabama 1975, § 43-8-190, states:
*205 “A mil, before the probate thereof, may be contested by any person interested therein, or by any person, who, if the testator had died intestate, would have been an heir or distributee of his estate, by filing in the court where it is offered for probate allegations in writing that the will was not duly executed, or of the unsoundness of mind of the testator, or of any other valid objections thereto; and thereupon an issue must be made up, under the direction of the court, between the person making the application, as plaintiff, and the person contesting the validity of the will, ás defendant; and such issue must, on application of either party, be tried by a jury.” (Emphasis added.)
We do not interpret the above statute as meaning that every “interested” person should have been made a party to the contest. We interpret it to stand exactly for the proposition it states—that a will, before being admitted to probate, “may be contested by any person interested therein.” Upon an examination of the record, this Court finds that § 43-8-190 was correctly followed by the contestants, the probate court, and the circuit court.
Code of Alabama 1975, § 43-8-199, upon a literal interpretation, further supports the proposition that not every interested person need be made a party to a contest conducted before the will has been probated. It states:
“Any person interested in any will who has not contested the same under the provisions of this article, may, at any time within the six months after the admission of such will to probate in this state, contest the validity of the same by filing a complaint in the circuit court in the county in which such will was probated.” (Emphasis added.)
Proceeding one step further, Code of Alabama 1975, § 43-8-200, explains which parties are indispensable in a contest involving a will that has been probated:
“In the event a contest of the probate of a will is instituted in the circuit court, as is or may be authorized by law, all parties interested in the probate of the will, as devisees, legatees or otherwise, as well as those interested in the testator [sic] if he had died intestate, as heirs, distributees or next of kin, shall be made parties to the contest; and if there be minors or persons of unsound mind interested in the estate or in the probate of the will, they shall be represented by their legal guardian, if such they have; if they have no such guardian, the court shall appoint an attorney-at-law as guardian ad litem to represent their interest in the contest, and the final judgment in such contest proceedings shall be conclusive as to all matters which were litigated or could have been litigated in such contest; and no further proceedings shall ever be entertained in any courts of this state to probate or contest the probate of such will.” (Emphasis added.)
Proponents assert in their brief that the case of McMaken v. McMaken, 18 Ala. 576 (1851), should be decisive on the issue pertaining to indispensable parties. While McMaken did involve issues similar to those in the case at bar, it can be distinguished on the element which is decisive in the present issue. In the present case, the will had not been probated. But in McMaken, the will had already been probated, thereby establishing certain parties as indispensable. The distinguishing factor, therefore, in determining if certain interested persons are indispensable parties is whether the will has been probated.
In this case, the will had not been probated; thus, §§ 43-8-199 and 43-8-200 do not apply, and the verdict was not rendered in the absence of indispensable parties.
The third issue presented to this Court for review is: Did the trial court err in refusing to present to the jury the proponents’ requested charge number one on the issue of undue influence? We hold that the trial court did not err.
Proponents allege that even though they received a directed verdict on the issue of undue influence at the close of all the evidence, the trial court should have given an *206 oral charge specifically telling the jury to disregard the issue of undue influence. We disagree.
The record clearly reflects that the trial judge strictly instructed the jury to consider only the issue of lack of testamentary capacity. This Court fails to see error in the fact that the trial judge refused to instruct the jury to disregard the theory of undue influence.
In Birmingham Belt R.R. v. Bennett, 226 Ala. 185, 191, 146 So. 265, 269 (1932), a negligence case, this Court held that it was not error for the trial judge to refuse an instruction to the jury on an issue that had been withdrawn from the jury's consideration. The trial judge, in his oral charge, had specifically narrowed the issue, thereby negating the possibility of error.
Furthermore, in Wear v. Wear, 200 Ala. 345, 348, 76 So. 111, 114 (1916), this Court stated:
“[The issue based upon] the trial court’s refusal to give a special written instruction wherein the proponent (appellant) sought to have the jury advised that there was ‘no evidence' of a particular fact, or to support a particular proposition, may be eliminated. It has been long settled that trial courts are not required to declare to juries that there is no evidence of particular facts or supporting a particular proposition, and it is not error to refuse such requests for the instruction of juries.” (Emphasis added.)
In the present case, the court in its oral charge specifically narrowed the issue to lack of testamentary capacity, thereby negating proponent’s contention that the refusal to give the charge was reversible error.
The final issue presented to this Court for review is: Was it reversible error to allow testimony at trial concerning the will of the testatrix’s deceased husband? We hold that it was not.
The following occurred at trial upon the cross-examination of Ruby Hart, one of the proponents:
“CROSS-EXAMINATION
“BY MR. GILMORE:
“Q. Mrs. Hart, maybe I misunderstood you. You said you was [sic] fifteen when Mr. Tillman died. You was [sic] talking—
“A. I said when the son died.
“Q. And you were fifty-two or so when he died, or so?
“A. I probably was. I don’t remember. “Q. Now, Mr. Coleman Tillman had a will when he died, didn’t he?
“A. Yes.
“Q. And he left certain things to his family and ceftain things to his wife, didn’t he?
“A. No, his will—
“MR. EDWARD TURNER:
“We object to that. Mr. Tillman’s will would be the best evidence of that. “MR: GILMORE:
“If she knows.
“THE COURT:
“I understand it would be the best evidence. If she knows what it says, I will let him ask.
“A. His will left everything to his wife.”
The proponents allege that the admission of the above testimony regarding the deceased husband’s will was reversible error. We disagree.
While the original will itself may have been the best evidence, we do not find the testimony of proponent Ruby Hart to have been so highly prejudicial as to call for reversal by this Court.
Rule 45, A.R.App.P., states:
“Error without injury.
“No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error *207 complained of has probably injuriously affected substantial rights of the parties.”
After examination of the record, this Court is of the opinion that the testimony elicited from proponent Ruby Hart pertaining to the will of the testatrix’s deceased husband does not warrant reversal.
Having considered all issues raised, we conclude that the judgment is due to be affirmed.
AFFIRMED.
JONES, ALMON, SHORES and ADAMS, JJ., concur.